[No. 14309.    Department Two.    February 1, 1918.]

P. M. WREN, *Respondent,* v. THE CITY OF SEATTLE,
*Appellant.*[1]

MUNICIPAL CORPORATIONS—SIDEWALKS—SNOW AND ICE—INSTRUC-
TIONS. Abstract instructions as to the nonliability of a city for ac-
cidents occasioned solely by slipperiness caused by accumulations of
snow and ice are incorrect where they did not contain the qualifica-
tion that the accumulation had not been permitted to remain for an
unreasonable length of time.

SAME. A requested instruction as to the nonliability of a city for
accidents occasioned solely by slipperiness caused by accumulations
of snow and ice is properly refused where it assumed, contrary to all
evidence, that the sidewalk was covered with a smooth coating of
ice and snow.

SAME—SIDEWALKS—DEFECTS—PROXIMATE CAUSE—INSTRUCTIONS.
Where plaintiff's fall upon a defective sidewalk was due to a broken
board, and his foot passed between the boards of the walk, an in-
struction as to the nonliability of the city for accidents occasioned
solely by slipperiness by snow and ice is properly refused as outside
the issues.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. An instruc-
tion as to the duty of a city to mark dangerous places in the side-
walk is not prejudicial error, although outside the issues, where the
jury were repeatedly instructed that the plaintiff could not recover
unless injured in the manner alleged in the complaint.

MUNICIPAL CORPORATIONS—SIDEWALKS—PROXIMATE CAUSE. That
the slippery condition of a sidewalk is a concurring cause of an acci-
dent upon a defective walk does not exonerate the city.

Appeal from a judgment of the superior court for
King county, Frater, J., entered April 16, 1917, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action for personal injuries sustained through a
defective sidewalk. Affirmed.

*Hugh M. Caldwell* and *Frank S. Griffith,* for appel-
lant.

*Griffin & Griffin,* for respondent.

[1]Reported in 170 Pac 342.

ELLIS, C. J.—This is an action for personal injuries suffered by plaintiff through a fall on a board sidewalk maintained by defendant. Plaintiff alleged, in substance, that the accident happened on the west side of Fourth avenue west, between West Smith and West Holliday streets, in the city of Seattle, while he was walking north thereon on February 8, 1916, between 5 and 5:30 o'clock p. m. The sole negligence charged was that the sidewalk was two boards wide; that a sufficient number of supports were not placed beneath these boards to maintain them in a reasonably safe manner; that the boards were not nailed to such supports as were there, and that one of the boards was, and long had been, broken and split, leaving a large crack between the boards and a large crack in the board which was broken, split and splintered. It was alleged that plaintiff caught his right foot in this defective board and in the opening caused thereby and fell with great force and violence, breaking his right leg above the ankle, breaking the third finger of his right hand, and necessitating the amputation of the leg, which amputation took place about April 1, 1916, all to his damage, for the permanent injury, physical and mental pain and suffering, medicines, medical services and hospital expenses, in the aggregate sum of $15,000. It was further alleged that plaintiff, within thirty days after the injury, but before the amputation, presented to the city council and filed with the city clerk his claim for the injuries as required by law. Defendant answered, denying the foregoing allegations, and pleading in general terms contributory negligence as an affirmative defense. This matter of defense was traversed by reply.

The evidence shows that the sidewalk in question ran north and south on the west side of the street and con-

sisted of two boards, each twelve inches wide, an inch and a half thick, and sixteen feet long, laid side by side and resting upon 3x12 inch cross-pieces, one in the middle of the boards and one at each end. The west board was split from the inside corner of the north end for about four feet back and diagonally across almost to the other side. It had been in this condition for several months. Plaintiff testified, in substance, that he had passed over the sidewalk in question but once or twice before and had never noticed its condition; that, at the time of his fall, there had been a heavy snow which had been shoveled off the sidewalk, but that there remained thereon sufficient snow to conceal the condition of the broken board and the crack between the boards; that he stepped upon the broken board, which bent under his weight, causing his right foot to pass under the edge of the other board, so that the side of his foot was caught between the boards, causing him to fall heavily, breaking both bones of the right ankle, and that, in endeavoring to catch himself, he also broke the third finger of his right hand; that, in the fall and in releasing his foot, the snow was removed from the boards so that he then observed the condition of the broken board, and that it was loose, not being nailed to the cross-piece at the north end. No one else was present at the time of the accident, but several persons arrived soon afterwards. Four or five of these corroborated plaintiff as to the condition of the broken board and that it was not nailed to the north cross-piece. Two or three of these testified that the split board would bend down four or five inches under a man's weight. A section, about eight feet long, of the north end of the walk was in evidence as an exhibit. It shows both boards nailed to the cross-piece. No one testified that it was in the same condition as at the time of the

accident, but the two men who procured it over a year after the accident testified that the boards were nailed to the cross-piece when they procured it and the nails and nail holes were apparently old. These two men testified that, at that time, the split board would not bend under their weight more than "a scant half inch" below the other board, and that it then rested upon solid ground. Several witnesses testified that, in winter, the ground under the boards was soft and wet, so that, when the broken board was stepped upon, it would bend down and splash water upon the feet. One woman testified that, in this way, her own foot had been caught, throwing her down at the same place.

One of the men in charge of the ambulance which removed plaintiff to the city hospital about an hour after the fall testified that plaintiff told him he slipped upon "the icy sidewalk, that is, on the snow—on the ice." Plaintiff denied this, and there was no evidence that there was any ice. The evidence was conclusive that it had been raining since about four o'clock that day and that the snow was soft and "slushy."

One bone of the same leg had been broken about two inches above the break here in question almost three years before this, but the evidence was uncontradicted that the break had completely healed, though plaintiff sometimes walked with a cane when in the city as a matter of caution, and was using a cane when he fell. For a considerable time prior to the injury here involved he had been doing the heaviest kind of work on ranches and in the woods. The leg was amputated below the knee on April 1, 1916, by a surgeon of plaintiff's own selection, but there is no evidence that the amputation could have been avoided or that the treatment throughout was not skillful and proper.

The court, after stating the issues as presented by the pleading, instructed the jury specifically that:

"Before the plaintiff can recover against the defendant, it is necessary for the plaintiff to prove the following things: 1. That he was injured by catching his foot in and falling upon a defective sidewalk as alleged in the complaint. 2. That said sidewalk was in such a defective condition as to make it dangerous to travelers using such sidewalk. 3. That said defective sidewalk was not marked by any light or beacon so as to warn persons approaching or using the same of the probable danger. 4. That the city had either actual or constructive notice of the defective condition of said sidewalk. 5. That the defective condition of the walk as complained of was the proximate cause of the injuries the plaintiff suffered. 6. That, within thirty days after the accident, the plaintiff filed a claim with the city of Seattle. 7. The nature and extent of the injuries."

These were elaborated, but not materially changed, by subsequent instructions. The jury was told that the city would only be liable in case of notice of the defect, either actual or through its existence for such length of time before the injury occurred as to give the city an opportunity to repair such defect, and was faultlessly instructed as to what would constitute constructive notice. As to proximate cause, the court instructed as follows:

"I have instructed you that the plaintiff must show that some one or more of the acts of negligence complained of was the proximate cause of his injuries. By proximate cause we mean probable cause — direct cause, and a general test as to whether negligence is the proximate cause of an accident is whether or not it is such negligence as a person of ordinary intelligence, prudence, care and caution should have foreseen that an accident was liable to be caused thereby. The proximate cause of an injury is that cause which in natural and continuous sequences, unbroken by any

efficient intervening cause, produces the injury and without which the injury would not occur.''

Touching the burden of proof, the jury was told that:

''The burden of proof is upon the plaintiff in every case to satisfy you as to the truth of the material allegations of the complaint before plaintiff will be entitled to recover. . . . In order for the plaintiff to recover in this case he must satisfy you by a fair preponderance of the evidence of the truth of the material allegations contained in his complaint.''

The court then instructed faultlessly as to the rule of preponderance of evidence, told the jury that negligence is never presumed, and defined negligence, in substance, as the doing of something which an ordinarily prudent person would not do, or failing to do that which an ordinarily prudent person would do, and continued:

''If tried by this definition you find that the defendant, the city of Seattle, was not guilty of negligence as alleged in the complaint, whereby the plaintiff, P. M. Wren, suffered the injury described in his complaint, then your verdict should be for the defendant. On the other hand, if tried by the same definition, you find from a preponderance of the evidence that the defendant was guilty of negligence in the manner alleged in plaintiff's complaint, and that such negligence was the proximate cause of the accident whereby plaintiff sustained the injuries complained of, then your verdict should be for the plaintiff, unless you further find that the injuries to the plaintiff were caused by his own negligent acts to which he himself contributed.''

The court gave correct instructions as to the law governing contributory negligence, and instructed that it is the duty of the city to keep its sidewalks in a reasonably safe condition, but that the city is not an insurer, and then told the jury:

"You are further instructed that a municipal corporation, such as the defendant city of Seattle, is only liable for such defects in its streets as are in themselves dangerous, or such that a person exercising reasonable care and caution for his own safety cannot avoid danger in passing over them, and if you believe in this case that the sidewalk over which the plaintiff traveled was not in itself dangerous to the safety of persons using the same with reasonable care, and that the alleged injury claimed to have been suffered by plaintiff was the result of a mere accident or from want of reasonable care for his own safety on the plaintiff's part, then your verdict should be for the defendant."

The jury returned a verdict for plaintiff in the sum of $7,500. Defendant moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. Both motions were denied. Defendant appeals.

Appellant's main contention is that the court committed fatal error in refusing to give the following requested instructions which, for convenient reference, we number:

"(1) The city is not liable for accidents occasioned by mere slipperiness caused by ice and snow upon the sidewalk, and if you find from the evidence that plaintiff's accident was caused solely by the slippery condition of the sidewalk, then I instruct you that he cannot recover.

"(2) If you find from the evidence that the plaintiff knew, or by the exercise of reasonable care should have known, of the slippery condition of the sidewalk by reason of its being covered with a coating of smooth ice and snow, and that he was likely to slip and fall thereon, then I charge you that, by walking upon said sidewalk, he assumed all the risks and cannot recover damages from the city for any resulting injury.

"(3) I charge you, as a matter of law, that a municipality is not liable for injuries resulting merely from the slippery condition of a sidewalk caused by smooth ice and snow, and if you find in this case that

the sidewalk on which the plaintiff claims to have slipped and fallen was in a reasonably safe condition, but that it was covered by smooth ice or snow, and the plaintiff slipped and fell, the city would not be liable and your verdict should be for the defendant.''

It is undoubtedly the law that a municipality is not ordinarily liable for accidents occasioned solely by mere slipperiness caused by natural accumulations of snow or ice upon its sidewalks, not so prominent or rough as in themselves to constitute an obstruction, and provided they have not been permitted to remain for an unreasonable length of time in view of all the circumstances. *Calder v. Walla Walla,* 6 Wash. 377, 33 Pac. 1054; *Bull v. Spokane,* 46 Wash. 237, 89 Pac. 555, 13 L. R. A. (N. S.) 1105. But, considered as mere legal abstractions, neither of the above requests was correct. None of them contained the qualification requisite to immunity, that the jury should find that the ice or snow, though not so accumulated as to constitute an obstruction, had not been permitted to remain for an unreasonable length of time in view of all the circumstances. The request which we have numbered 2 presented a palpable comment upon the evidence. Even as a comment it assumed a fact contrary to all the evidence, viz.: that the sidewalk was covered with ''a smooth coating of ice and snow.'' Moreover, even assuming as a fact that the sidewalk was slippery from snow or ice, respondent did not, as a matter of law, assume the risk of a broken board or crack in the sidewalk itself sufficient to admit his foot should he slip; nor the risk of injury from any other defect inherent in the walk itself. In any view of the case, this second request was properly refused.

But, aside from the fact that these instructions incorrectly stated the law, they were properly refused. They were directed to matter wholly outside the issue

as presented by pleadings and made by the evidence, and to which respondent's right to recover was strictly confined by the instructions which were given. Through these requests appellant was evidently trying to evade liability for an inherent defect in the sidewalk itself which respondent alleged in his complaint and positively testified caused his injury, by magnifying the adventitious circumstance that the sidewalk was partly covered with snow or slush, more or less slippery, as a possible cause of the accident. See *Waters v. Kansas City,* 94 Mo. App. 413, 68 S. W. 366.

The case of *Calder v. Walla Walla, supra,* is cited as authority for these requests, but that case is readily distinguishable from this, both on pleadings and evidence. In that case, the city was charged with negligence in permitting snow and ice so to accumulate as to constitute a dangerous obstruction on the walk. That was the sole negligence charged. Though the instructions there given are not set out, the court had evidently instructed that, for injury from such an obstruction, the city would be liable. This court held that the instruction there requested should have been given in qualification of the instruction which was given and as addressed to that sole issue. It did not hold that the existence of snow or ice, though so smooth and even and so recent of accumulation as not in itself to constitute negligence, is an excuse for defects inherent in the walk which, even through the aid of the snow or ice, cause an injury. No court, so far as we are advised, has ever held that the excusable existence of snow or ice, operating merely as a contributing condition in causing an injury by some defect inherent in the sidewalk itself, can be successfully asserted in absolution from liability for injuries caused by such inherent defect. The pertinent decisions are the other

way. It is said by the supreme court of Kansas in a case closely analogous to this:

"There is in this case the defective sidewalk, for which the city is responsible; there is, perhaps (at least that possibility is involved in the instruction), the slippery condition of the sidewalk, for which no one is responsible; and there is the passing-over-it-of-the-plaintiff, for which she alone is responsible—unless indeed she was compelled by causes unknown, operating in endless succession upon each other, to walk over it. Indeed, she might have reached her destination by walking on another street. But in all these causes, proximate or remote, real or fancied, there was negligence in but one party, the plaintiff in error. Where the sufferer is in no fault, using ordinary care and diligence, and is injured by a defect in a public sidewalk, although the slippery state thereof may have combined with the defect to produce the accident, we cannot but hold that the city that constructs the walk, and invites people to walk upon it, and then permits it to remain in an unsafe and dangerous condition, is liable. So holding, the instruction was properly refused." *Atchison v. King,* 9 Kan. 550, 558, 559.

By the supreme court of Rhode Island it is said:

" 'Where two causes combine to produce the injury, both in their nature proximate, the one being the defect in the highway, and the other some occurrence for which neither party is responsible, the corporation is liable, provided the injury would not have been sustained but for the defect in the highway.' Dillon on Municipal Corporations, ed. of 1881, § 1007. It seems to us that this doctrine, at least where the concurring cause is a natural cause, or a pure accident for which no person is responsible, is the more reasonable doctrine. Indeed, we think it is the duty of the town, in making and mending its highways, to consider the natural effects of rain and snow and ice as affecting the safety and convenience of travel thereon, except so far as the statute exonerates them from duty in that regard." *Hampson v. Taylor,* 15 R. I. 83, 85, 8 Atl. 331, 23 Atl. 732.

See, also, *Lincoln v. Smith,* 28 Neb. 762, 45 N. W. 41; *Waters v. Kansas City,* 94 Mo. App. 413, 68 S. W. 366; *Hodges v. Waterloo,* 109 Iowa 444, 80 N. W. 523; *Hill v. Fond du Lac,* 56 Wis. 242, 14 N. W. 25; *Stilling v. Town of Thorp,* 54 Wis. 528, 11 N. W. 906, 41 Am. Rep. 60; *Salzer v. Milwaukee,* 97 Wis. 471, 73 N. W. 20; *Lyon v. Logansport,* 9 Ind. App. 21, 35 N. E. 128; *Ziegler v. Spokane,* 25 Wash. 439, 65 Pac. 752.

If respondent was injured as he alleged in his complaint and as he testified, namely, by his foot passing between the boards of the walk, then the fact, if it be a fact, that this was facilitated or even caused by slippery snow or ice would not absolve the city from liability. Any sidewalk is liable in winter to become slippery from snow or ice; any one is liable to slip on such snow or ice; but no one's foot will catch in a properly constructed sidewalk even though he slip on snow or ice. These things are as well known to city officials as to other people. They should be anticipated. They augment, rather than diminish, the duty of the city to keep the sidewalk itself free from inherent defects which may make such slipping more likely to result in injury. *Perkins v. Fond du Lac,* 34 Wis. 435; *Hill v. Fond du Lac, Atchison v. King,* and *Hodges v. Waterloo, supra.* When, therefore, the trial judge instructed, as he did repeatedly, that respondent could only recover by proving that the city was negligent "as alleged in the complaint," and specifically that he could not recover unless he proved "that he was injured by catching his foot in and falling upon a defective sidewalk as alleged in the complaint," and finally, that the city "is only liable for such defects in its streets as are in themselves dangerous," it was not incumbent upon the court to further instruct that the city was not liable for accidents resulting from snow and ice alone or resulting from any other specific causes neither alleged

in the complaint nor attempted to be proved as negligence. Respondent, in his testimony, merely mentioned the snow as concealing the condition of the walk. He testified that he did not slip on the snow. There was no evidence that there was any ice. The complaint did not mention either snow or ice. In every view of the case, the requested instructions were properly refused.

Appellant also predicates a claim of fatal error upon the giving of the following instruction:

"It is the duty of the city at all times to keep its sidewalks on its public streets in a reasonably safe condition for public use and not to permit anything that will make the use of the sidewalk in the ordinary manner unsafe. To this end it is the duty of the city to inspect its sidewalks in a reasonably careful and reasonably frequent manner for the purpose of ascertaining whether or not they are safe for public use. It is the duty of the city to mark dangerous places in its sidewalks upon the public streets, by warning signals or lights, and for any breach of this duty, proximately resulting in damages to persons using said sidewalks, the city is liable."

The last sentence of this instruction was outside the issues and should not have been given. But it could not have been prejudicial, in view of the fact that the jury was repeatedly told that respondent could not recover unless he proved that he was injured as alleged in his complaint, and, specifically, that he could not recover unless he had proved "that he was injured by catching his foot in and falling upon a defective sidewalk as alleged in the complaint."

Finally, it is claimed that the court should have granted the motion for judgment *non obstante veredicto,* or, in any event, the motion for a new trial. It is argued that the evidence shows that respondent was injured solely by slipping upon snow or ice. The an-

swer is that this theory is contrary to the decided preponderance of the evidence. It is next argued that the slippery condition of the sidewalk was a concurring cause of the accident exonerating the city from liability. The answer is that this theory, even were it sustained by any evidence worthy of the name, is contrary to the law. The further argument that the notice of claim filed with the city was insufficient is without merit. We have examined the notice in the light of the evidence and are satisfied that it fully meets the law and the facts.

The judgment is affirmed.

MOUNT, HOLCOMB, MORRIS, and CHADWICK, JJ., concur.